UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE AMERICAN AUTOMOBILE ASSOCIATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Cause No. 1:16-cv-2890-WTL-MPB ) |
| MICHAEL WALLER, | ) ) |
| Defendant. | ) |

## ENTRY ON PENDING MOTIONS

This cause is before the Court on numerous motions, each of which is addressed, in turn, below.

### Filings by Defendant Michael Waller

In the months since the Court's last Entry addressing the motions that were pending at that time, Defendant Michael Waller has made the following filings:

- Dkt. No. 86: Judgement of God

- Dkt. No. 87: Writ of Certiorari to the Supreme Judge of the World

- Dkt. No. 90: Declaration of Moses

- Dkt. No. 91: Errata

- Dkt. No. 92: Declaration of Moses

- Dkt. No. 93: Declaration of the Heavens

- Dkt. No. 94: Declaration of Matthew

- Dkt. No. 95: Award of Execution for the First Order of God's Judgement

- Dkt. No. 96: Declaration of God

- Dkt. No. 97: Errata

- Dkt. No. 98: Motion to Reconsider
- Dkt. No. 99: Order to Show Cause
- Dkt. No. 105: Declaration of God
- Dkt. No. 106: Motion to Strike
- Dkt. Nos. 107 & 108: Alternative Motion to Dismiss and brief in support
- Dkt. No. 112: Motion to Seal Case
- Dkt. No. 113: Order
- Dkt. No. 115: Untitled Document

As their titles suggest, many of these filings relate to Waller's alter ego, God, and Waller's claim that as God it is he, not the Court, who has the authority to make rulings and render judgment in this case. To the extent that any of these filings constitutes a motion, none of them has any merit and each is **DENIED**. To the extent that these filings are not motions, but rather purport to be orders or judgments of some kind, they have no legal effect.

### Plaintiff's Motion for Summary Judgment

The Plaintiff has filed a motion for summary judgment (Dkt. No. 100) against "Defendant Michael Waller and his sole proprietorship, AAA Automotive Parts" on various claims. In a nutshell, the Plaintiff alleges that Waller's use of the name "AAA Automotive Parts" for his business, as well as other uses of variations of "AAA" in conjunction with that business, constitutes infringement of various trademarks owned by the Plaintiff.

*Proper Defendant*

As an initial matter, "[a] proprietorship is not a legal entity, but merely a name under which the owner, who is the real party in interest, does business." *Jeroski v. Fed. Mine Safety & Health Review Comm'n*, 697 F.3d 651, 652 (7th Cir. 2012) (citing *York Group, Inc. v. Wuxi Taihu Tractor Co.,* 632 F.3d 399, 403 (7th Cir. 2011); *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th

Cir. 1997)). Therefore "[a] sole proprietorship . . . is not a suable entity separate from the sole proprietor." *Bartlett*, 128 F.3d at 500. The only proper defendant in this case is Waller. The Court has conformed the caption accordingly, and the Clerk is directed to correct the docket as well.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Because Waller has failed to respond to the Plaintiff's motion for summary judgment in any substantive manner, the facts asserted by the Plaintiff in its motion are deemed admitted by Waller to the extent that they are supported by evidence in the record. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). "However, a nonmovant's failure to respond to a summary judgment motion . . . does not, of course, automatically result in judgment for the movant." *Id.* (citations omitted). Rather, the moving party, here the Plaintiff, must still demonstrate that it is entitled to judgment as a matter of law. *See id.*[1]

Waller is proceeding pro se in this litigation, and the Plaintiff provided him with the notice required by Local Rule 56-1(k). *See* Dkt. No. 102.

*Relevant Facts*

The following facts are asserted by the Plaintiff in its Statement of Material Facts Not in Dispute and properly supported by the evidence of record.

AAA has used certain marks in commerce since 1902 in connection with

---

[1] Thus, the Plaintiff's Motion for Summary Ruling (Dkt. No. 110) must be **DENIED**.

3

automobile products and services. AAA has registered more than one hundred trademarks with the United States Patent and Trademark Office ("USPTO"), including the following (hereinafter referred to collectively as "the AAA Marks":[2]

> a. Reg. No. 0,829,265: **AAA**, registered May 23, 1967 for *inter alia*, "providing emergency road service," "arranging for discount purchases," and "collecting damage claims" in Class 35 and "automobile association services rendered to motor vehicle owners, motorists, and travelers generally-namely, obtaining motor vehicle license plates and title certificates" and "conducting motor vehicle tests and making tests of automotive and related products" in Class 42.
>
> b. Reg. No. 2,158,654: **AAA & Design**, registered February 24, 1998 for, *inter alia*, "magazines, pamphlets, booklets, and directories in the field[] of . . . vehicle information and repair" in Class 16, "arranging for discount purchases" in Class 35, "emergency road services" in Class 37, and "consumer product safety testing and consultation, namely, conducting motor vehicle tests and endurance tests, and making tests of automotive and related products" in Class 42.
>
> c. Reg. No. 3,316,227: **AAA & Design**, registered October 23, 2007 for "indicating membership in a(n) automobile membership club" in U.S. Class 200.
>
> d. Reg. No. 1,168,790: **TRIPLE A**, registered September 8, 1981 for "automobile association services-namely, promoting the interests of motor vehicle owners, motorists and travelers, and sponsoring programs for the promotion of pedestrian safety and related public service activities" in Class 42.
>
> e. Reg. No. 3,046,904: **AAA**, registered January 17, 2006 for "glass repair services for vehicles" in Class 37.
>
> f. Reg. No. 3,046,905: **AAA & Design**, registered January 17, 2006 for "glass repair services" in Class 37.
>
> g. Reg. No. 3,102,319: **AAA & Design**, registered June 6, 2006 for "batteries for

---

[2]In one of his filings, Waller moves to strike the Plaintiff's evidence regarding its registered trademarks on the ground that it has not provided an affidavit of authenticity from the USPTO. Regardless of what might be required to authenticate a document for admission at trial, "[e]vidence submitted on summary judgment 'need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content.'" *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761 (7th Cir. 2008) (quoting *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.,* 301 F.3d 610, 613 (7th Cir. 2002)). The exhibits submitted by the Plaintiff in support of its motion for summary judgment satisfy this requirement. If Waller believed that any of them were not authentic, he could have objected to them on that basis pursuant to Federal Rule of Civil Procedure 56(c)(2). He did not.

use in motor vehicles" in Class 9.

    h. Reg. No. 5,036,379: **AAA & Design**, registered September 6, 2016 for, *inter alia*, "magazines, pamphlets, booklets, and directories in the field[] of . . . vehicle information and repair" in Class 16, "administration of a discount program for enabling participants to obtain discounts on goods and services through use of a discount membership card" in Class 35, "emergency road side repair services" in Class 37, and "consumer product safety testing and consultation, namely, conducting motor vehicle tests and endurance tests, and making tests of automotive and related products" in Class 42.

    i. Reg. No. 1,449,079: **AAA APPROVED AUTO REPAIR & Design**, registered July 21, 1987 for "automobile repair services" in Class B.

    j. Reg. No. 3,604,164: **AAA TOTAL REPAIR CARE**, registered April 7, 2009 for "arranging for discounted automobile repair services for members of an association" in Class 35, "motor vehicle diagnosis and repair services" in Class 37, and "arranging for transportation of individuals whose vehicles are under repair" in Class 39.

AAA uses the AAA Marks to identify automotive services provided by AAA and its approved service providers, including those that provide emergency road services and auto repair services, as well as to distinguish such products and services from those not affiliated with or endorsed by AAA. AAA invests millions of dollars each year in advertising and promotion, including on AAA-affiliated websites. As a result of its marketing efforts, AAA earns tens of millions of dollars in revenue each year; it has grown to over fifty million members; and its marks are among the most recognizable in the country. The AAA Marks have developed recognition and fame throughout the United States, including in Indiana, in connection with the automotive goods and services offered by AAA. AAA has filed lawsuits to prevent others from using its trademarks in related

fields, such as automotive services and parts, but has not filed lawsuits to prevent others from using its trademarks as protected speech or in unrelated fields, such as arbitration,[3] banking, or bond rating.

Waller owns the AAA Automotive Parts business as a sole proprietorship, which markets automotive parts and related services in Indiana and throughout the United States. Waller exerts control over and makes all decisions related to AAA Automotive Parts. Waller uses the domain name TRIPLEAPARTS.COM ("the Website") to advertise and promote the AAA Automotive Parts business. Waller uses AAA's logo on the Website. AAA Automotive Parts' customers include some of AAA's approved service providers and repair shops, to which AAA Automotive Parts has offered discounts. By Waller's own admission, many customers have perceived, erroneously, a connection between AAA and AAA Automotive Parts because "[a]round a hundred [repair] shops" have contacted AAA after learning about discounts offered to AAA-approved repair shops by AAA Automotive Parts. Dkt. No. 11 at 3 ¶ 3. The Plaintiff has not authorized Waller to use its marks.

In or around June 2016, AAA discovered Waller's unauthorized use of the AAA Automotive Parts business name and the use of TRIPLEAPARTS.COM for the Website. The Plaintiff sent a letter to the domain name registrant for the Website, which was returned by the United States Postal Service as undeliverable. The Plaintiff reported that fact to the Internet Corporation for Assigned Names and Numbers ("ICANN"), and on or around September 1, 2016, ICANN suspended the TRIPLEAPARTS.COM domain name registration based on the

---

[3]The Plaintiff presumably included this fact in response to Waller's insistence in various filings that the AAA Marks are not valid because "AAA" has other meanings, including as an abbreviation for the American Arbitration Association and as a bond rating. Unlike Waller, the American Arbitration Association and the bond market do not compete in the automotive market in which the Plaintiff operates.

Plaintiff's report. On or around October 17, 2016, Waller reinitiated use of the AAA Marks on the Website. On December 2, 2016, Waller offered to sell the TRIPLEAPARTS.COM domain name to the Plaintiff for $250,000. Since the initiation of this lawsuit, Waller has registered at least the following new domain names: AAAPARTS.NET; AAAPARTSCARD.COM; AAAPARTSNETWORK.COM; TRIPLEDPARTS.COM; TRIPLEAPARTS.NET; and AMERICANPARTSASSOCIATION.COM.

## *Discussion*

The Plaintiff alleges that Waller's use of variations of "AAA Automotive Parts," "AAA," "TRIPLEA," and the AAA logo in conjunction with his auto parts business infringes upon its trademarks and constitutes unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and Indiana common law.

> The Lanham Act established a federal right of action for trademark infringement to protect both consumer confidence in the quality and source of goods and businesses' goodwill in their products. A trademark is any word, name, symbol, or device, or any combination thereof, used to identify a person's good and to distinguish it from those goods manufactured or sold by others. 15 U.S.C. § 1127. Section 32 specifies a cause of action for the unauthorized use of a registered trademark. As relevant here, that section renders a person liable in a civil suit when he "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" § 1114(a). More broadly, section 43(a) of the Act creates a remedy against a person who engages in unfair competition by, *inter alia*, falsely designating the origin of a product. Section 43(a)(1), in relevant part, imposes liability on "[a]ny person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, ... which—(A) is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... ." § 1125(a)(1)(A). To prevail on either type of claim, a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers.

*Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (some internal quotation marks and citations omitted). A claim for unfair competition under Indiana common law is analyzed in the same manner. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

In this case, the Plaintiff has demonstrated that its trademarks are protectable. All of the trademarks listed above have been registered with the United States Patent and Trademark Office, and all but one of them was registered more than five years ago. "Once a mark has been used for five years following registration, it becomes 'incontestable.'" *Eco Mfg. LLC. v. Honeywell Int'l, Inc.*, 357 F.3d 649, 651 (7th Cir. 2003) (quoting 15 U.S.C. § 1065). "Incontestability is 'conclusive evidence of the validity of the registered mark and . . . the registrant's exclusive right' to use the mark in commerce." *Id.* (quoting 15 U.S.C. § 1115(b)). And while trademark "protection dissipates if the mark becomes generic," *id.*, Waller has presented no evidence which would support a finding that any of the marks at issue have become generic.[4] Thus, the uncontested evidence of record establishes as a matter of law that the registered trademarks listed above are protectable, thus satisfying the first element of the Plaintiff's trademark infringement and unfair competition claims.

In order to prevail on its claims, the Plaintiff must also demonstrate that the defendant's use of the marks is likely to cause confusion among consumers.

> Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to "palm off" his product as that of the plaintiff. The likelihood of confusion test is an equitable

---

[4]While the mark that was not registered more than five years ago does not enjoy "incontestable" status, the result is the same, as the fact that it is registered is prima facie evidence that it is valid, and Waller has not presented any evidence to the contrary. *Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017).

8

balancing test. No single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented. In many cases, however, three of the factors are likely to be particularly important: the similarity of the marks, the defendant's intent, and actual confusion.

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677-78 (7th Cir. 2001). In this case, the undisputed evidence of record demonstrates the following: (1) the marks are identical or very similar in appearance and suggestion; (2) the products offered by Waller and the Plaintiff are similar, in that both are automotive in nature; (3) both Waller and the Plaintiff operate their businesses nationwide, including over the internet; (4) the relative accessibility and inexpensive nature of automotive products and services suggests that consumers will not use more than an ordinary degree of care in discriminating between various sources of those products and services; (5) the Plaintiff's marks are exceptionally strong; and (6) Waller has cultivated the perception that his business is related to the Plaintiff by offering a discount to AAA members. With regard to the final factor, whether Waller intended to "palm off" his company as affiliated with the Plaintiff,

> In some circumstances, an intent to confuse may be reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety. If the marketing and business presence of the senior mark . . . is nearly ubiquitous in the geographic area where the junior mark competes, a trier of fact can easily conclude that the creator of a strikingly similar junior mark intended to confuse.

*AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008) (citation omitted). Such is the situation here. Thus, the undisputed facts of record demonstrate that each of the relevant factors support a finding of likelihood of confusion.

Because the Plaintiff has submitted evidence from which a reasonable trier of fact could find in its favor on its trademark infringement and unfair competition claims, and that evidence is uncontroverted, the Plaintiff is entitled to summary judgment on those claims. Further, as discussed below, because the Plaintiff is entitled to all of the relief it seeks in this case as a result

of its success on its trademark infringement and unfair competition claims, the Court need not examine its remaining claims of trademark dilution and cyberpiracy. *Cf. Elliott v. Bd. of Sch. Trustees of Madison Consol. Sch.*, 2017 WL 5988226, at *3 (7th Cir. Dec. 4, 2017) ("Although the district court based its final judgment only on Elliott's federal-law theory and not his state-law theories, Elliott received the full relief that his state-law theories could have provided, so nothing more needed to be decided.").

*Propriety of Injunctive Relief*

The Plaintiff asks the Court to enter a permanent injunction enjoining Waller from using its marks. A permanent injunction is appropriate when the Plaintiff has shown (1) success on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed by the relief requested. *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). The Plaintiff has made each of these showings here. The Plaintiff has succeeded on the merits with regard to its trademark infringement and unfair competition claims and Waller's unauthorized use of the AAA Marks has and will continue to cause the Plaintiff irreparable harm, as it prevents the Plaintiff from controlling the quality of goods and services linked to its marks in the minds of consumers and from protecting its goodwill and reputation. *See Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) ("[I]rreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion."). The benefit to the Plaintiff of preventing the continuation of this irreparable harm outweighs the injury to Waller, as any such injury—the necessity of changing the name of his business, domain name, etc.—is caused solely by Waller's own improper use of the Plaintiff's marks. And, finally, the injunction sought by the Plaintiff will benefit the public, protecting it from being

10

misled into believing that Waller's business has been given a stamp of approval from the Plaintiff. Accordingly, the Court will enter the injunction requested by the Plaintiff.

*Plaintiff's Request for Attorneys' Fees and Costs*

In addition to injunctive relief, the Plaintiff requests an award of its attorneys' fees and costs. As the prevailing party in this case, the Plaintiff is entitled to recover its costs. Federal Rule of Civil Procedure 54(d)(1). In addition, the Lanham Act provides for an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The Seventh Circuit has held that "a case under the Lanham Act is 'exceptional,' in the sense of warranting an award of reasonable attorneys' fees to the winning party, if the losing party was . . . the defendant and had no defense yet persisted in the trademark infringement or false advertising for which he was being sued, in order to impose costs on his opponent." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 963-64 (7th Cir. 2010).

> It should be enough to justify the award if the party seeking it can show that his opponent's claim or defense was objectively unreasonable—was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponent—in other words only because it was extortionate in character if not necessarily in provable intention. That should be enough to make a case "exceptional."

*Id.* at 965.

In this case, Waller offered no real defense to the Plaintiff's trademark claims. Instead, he repeatedly made frivolous filings, culminating in his adoption of his alter ego—God—and the filing of documents that purport to be declarations of various Biblical figures, *see, e.g.,* Dkt. Nos. 92 & 93, as well as a document purporting to be a money judgment (for billions of dollars) in his own favor, even though he no longer had any pending counterclaims, Dkt. No. 86, and documents in which he describes the Plaintiff as "demons from Hell possessing human bodies" or similar epithets, *see, e.g.* Dkt. Nos. 92-94. These filings were made after the Court

11

admonished Waller that he was moving perilously close to having restrictions placed on his filings due to his penchant for frivolous filings. Waller has behaved in an objectively unreasonable fashion and his actions have vastly increased the cost of this litigation to the Plaintiff and to the taxpayers. Thus, this is an exceptional case, and the Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), the amount of which will be determined by the applicable post-judgment procedures.

    SO ORDERED: 12/14/17

*William T. Lawrence* (signature)

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by United States Mail to:**

**MICHAEL WALLER**
**800 West 11th Street**
**Bloomington, IN 47404**

Copies to all counsel of record via electronic notification